UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

IRA SANDEFUR,

          Plaintiff,

     v.

CAROLYN W. COLVIN,

          Defendant.

Case No.  14-cv-01813-KAW

**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DENYING DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT**

Re: Dkt. Nos. 22, 27

Plaintiff Ira Sandefur seeks judicial review, pursuant to 42 U.S.C. § 405(g), of the Commissioner's final decision, and the remand of this case for further proceedings.  Pending before the Court is Plaintiff's motion for summary judgment and Defendant's cross-motion for summary judgment.  Having considered the papers filed by the parties, and for the reasons set forth below, the Court GRANTS Plaintiff's motion for summary judgment, DENIES Defendant's cross-motion for summary judgment, and REMANDS the case for an immediate award of benefits.

## I.    BACKGROUND

Plaintiff Ira Sandefur is fifty-eight years old.  Administrative Record ("AR") 177.  Plaintiff has two young children and is married, albeit separated from his wife.  AR 178.  Plaintiff is the primary caretaker to his two children, as his wife has had a significant problem with drugs.  AR 786-88, 1151.

Plaintiff's early life was marked by his alcoholic father's violent behavior directed toward Plaintiff and Plaintiff's mother.  AR 1150.  As an adult, Plaintiff has suffered domestic violence at the hands of his wife.  AR 479, 1151.

Plaintiff graduated from high school in 1975.  AR 225.  Plaintiff has a history of learning problems and received special education services.  AR 751.  From 1976 to 1985, Plaintiff served

United States District Court
Northern District of California

United States District Court
Northern District of California

in the military.  AR 177.  In 2004, he completed some training in carpentry.  AR 226.  Currently, Plaintiff is taking welding classes four days a week at Chabot College in Hayward, California. AR 58.   Plaintiff reports difficulty keeping up with the pace of the class, but continues to attend so that he has something to do.  *Id.*  Prior to January 2009, Plaintiff worked as a laborer performing tasks in carpentry, construction, lighting, and welding.  AR 232.

Four physicians and a psychology intern have offered medical evidence in regards to Plaintiff's disability. Plaintiff has a history of abusing alcohol, marijuana, and cocaine. AR 543-747, 852-1071, 1092-1142.  In August 2009, Plaintiff was diagnosed with major depressive disorder and history of substance abuse by Dr. Roger Stoltzman after undergoing an initial psychiatric evaluation at the Oakland Veteran's Administration Outpatient Clinic ("VA"). AR 512-16.  Since his diagnosis, Plaintiff has received mental health treatment from Dr. Stoltzman and Dr. James Howard and has concurrently participated in substance abuse classes at the VA. AR 50.  At the VA Clinic, Plaintiff was prescribed Prozac, Trazedone, and Remeron. AR 1133.

Dr. Howard, who, on average, sees Plaintiff 4-5 times per year, assessed Plaintiff's limitations as marked in activities of daily living, maintaining social functioning, and maintaining concentration, persistence, and pace. AR 1145.  Dr. Howard found that Plaintiff would have difficulty completing a normal workday without interruptions by psychologically-based symptoms, which would cause frequent absences of more than four days per month. AR 1145-46. Additionally, Plaintiff would be unable to respond appropriately to changes in a work setting AR 1146.  Dr. Howard, who was also involved with Plaintiff's substance abuse treatment, opined that alcohol or substance abuse does not contribute to the limitations, noting that "Mr. Sandefur's emotional problems render him unable to function in several areas, even apart from his alcoholism." AR 1146.

In February 2011, Dr. Rosemarie Ratto, Ph.D, performed a psychological consultative examination on Plaintiff at the request of the Social Security Administration.  AR 751-54.  Dr. Ratto observed that Plaintiff had adequate speech, organized thoughts, no evidence of psychomotor retardation, was able to read and write a simple sentence, had a depressed mood, adequate immediate memory, adequate concentration, and attention to follow a three-part simple

2

United States District Court
Northern District of California

1  command. AR 752-53. Dr. Ratto diagnosed Plaintiff with a dysthymic disorder, possibly a major

2  depressive disorder, a history of a learning disorder, and alcohol and substance abuse in remission.

3  AR 753. Dr. Ratto opined that Plaintiff was able to understand and carry out simple instructions,

4  but had weakness in his ability to pay attention and concentrate, and his impaired memory was

5  only adequate for simple tasks. *Id.* Dr. Ratto further opined that, due to emotional difficulties, he

6  may have problems getting along with others, and would have difficulty coping with the stress of

7  employment. *Id.* Plaintiff was assigned a Full Scale IQ of 71.[1] *Id.*

8       Since February 2011, Arliss Logan, M.A., a psychology intern at the Early Childhood

9  Mental Health Program of Oakland Children's Hospital, has provided weekly child-parent

10  psychotherapy services to Plaintiff and his children. AR 785. In June 2011, Ms. Logan noted that

11  Plaintiff would have difficulty maintaining employment due to his depression, inability to cope

12  with stress, and his need for additional time to process material and comprehension. AR 786-88.

13       In November 2011, Plaintiff was referred to Dr. Jamie Candelaria-Green, Ph.D and Dr.

14  Linda Avery, Ph.D. for a cognitive and educational evaluation after a preliminary screening was

15  performed through CalWORKs. AR 1150. On testing, Plaintiff's overall intellectual ability was in

16  the average range, but his cognitive processing abilities and academic skills were both affected by

17  weak or low processing speed. AR 1155. Plaintiff was diagnosed with a writing disorder affecting

18  his spelling and grammar and learning disorder affected by weaknesses in memory, attention, and

19  processing speed, and was diagnosed with having specific learning disabilities in the

20  processing/cognitive area and in writing fluency. AR 1155, 1157. Drs. Candelaria-Green and

21  Avery assigned Plaintiff a GAF score of 50-60. AR 1158. They further opined that Plaintiff

22  would be in a much better position to pursue vocational training and steady employment following

23  the success of his mental health treatments. AR 1159.

24       On January 12, 2010, Plaintiff filed an application for social security disability benefits

25  under Title II of the Social Security Act. AR 175-184. This claim was denied on March 18, 2010.

26

27

28

---

[1] A Full Scale IQ of 70 is mild mental retardation (now known as an intellectual disability). *See* U.S. SOC. SEC. ADMIN., DISABILITY EVALUATION UNDER SOCIAL SECURITY: 12.05 INTELLECTUAL DISABILITY, *available at* http://www.ssa.gov/disability/professionals/bluebook/12.00-MentalDisorders-Adult.htm (last visited Sept. 23, 2015).

AR 82-86.  Plaintiff filed another application for Title II benefits on November 2, 2010.  AR 68.
The alleged onset date was August 1, 2009.  AR 69.  The second claim was denied on April 5,
2011.  AR 89-93.  A request for reconsideration was filed on May 25, 2011.  AR 94-95.  That
request was denied on August 3, 2011.  AR 96-101.

On August 31, 2011, Plaintiff filed a written request for review of decision hearing.  AR
103-04.  A hearing was held before Administrative Law Judge ("ALJ") Mary P. Parnow on
February 21, 2012. AR 44-66.  At the hearing, Dr. Griffin, a medical expert, testified that
Plaintiff's borderline intellectual functioning causes mild limitations, and would likely limit him to
simple, repetitive work.  AR 50-51.  Dr. Griffin further testified that it was unclear what additional
functional limitations would result from Plaintiff's alcohol abuse and depressive order.  *Id.*  An
unfavorable decision was issued on April 24, 2012.  AR 22-43.

A request for review of the hearing decision was filed with the Appeals Council on June
22, 2012.  AR 17-19.  On February 24, 2014, the Appeals Council denied Plaintiff's request for
review.  AR 1-6.  On April 21, 2014, Plaintiff commenced this action for judicial review pursuant
to 42 U.S.C. §405(g).  (Compl., Dkt. No. 1 at 1-2.)

On December 23, 2014, Plaintiff filed a motion for summary judgment. (Pl.'s Mot., Dkt.
No. 22.)  On March 5, 2015, Defendant filed an opposition and cross motion for summary
judgment.  (Def.'s Opp'n, Dkt. No. 27.)  On March 17, 2015, Plaintiff filed a reply. (Pl.'s Reply,
Dkt. No. 28.)

## II.    LEGAL STANDARD

A court may reverse the Commissioner's denial of disability benefits only when the
Commissioner's findings are 1) based on legal error or 2) are not supported by substantial
evidence in the record as a whole.  42 U.S.C. § 405(g); *Tackett v. Apfel*, 180 F.3d 1094, 1097
(9th Cir. 1999).  Substantial evidence is "more than a mere scintilla but less than a
preponderance"; it is "such relevant evidence as a reasonable mind might accept as adequate to
support a conclusion." *Id.* at 1098; *Smolen v. Chater*, 80 F.3d 1273, 1279 (9th Cir. 1996).  In
determining whether the Commissioner's findings are supported by substantial evidence, the
Court must consider the evidence as a whole, weighing both the evidence that supports and the

United States District Court
Northern District of California

United States District Court
Northern District of California

evidence that detracts from the Commissioner's conclusion. *Id.* "Where evidence is susceptible to more than one rational interpretation, the ALJ's decision should be upheld." *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008).

Under Social Security Administration ("SSA") regulations, disability claims are evaluated according to a five-step sequential evaluation. *Reddick v. Chater*, 157 F.3d 715, 721 (9th Cir. 1998). At step one, the Commissioner determines whether a claimant is currently engaged in substantial gainful activity. *Id.* If so, the claimant is not disabled. 20 C.F.R. § 404.1520(b). At step two, the Commissioner determines whether the claimant has a "medically severe impairment or combination of impairments," as defined in 20 C.F.R. § 404.1520(c). *Reddick*, 157 F.3d 715 at 721. If the answer is no, the claimant is not disabled. *Id.* If the answer is yes, the Commissioner proceeds to step three, and determines whether the impairment meets or equals a listed impairment under 20 C.F.R. § 404, Subpart P, Appendix 1. 20 C.F.R. § 404.1520(d). If this requirement is met, the claimant is disabled. *Reddick*, 157 F.3d 715 at 721.

If a claimant does not have a condition which meets or equals a listed impairment, the fourth step in the sequential evaluation process is to determine the claimant's residual functional capacity ("RFC") or what work, if any, the claimant is capable of performing on a sustained basis, despite the claimant's impairment or impairments. 20 C.F.R. § 404.1520(e). If the claimant can perform such work, he is not disabled. 20 C.F.R. § 404.1520(f). RFC is the application of a legal standard to the medical facts concerning the claimant's physical capacity. 20 C.F.R. § 404.1545(a). If the claimant meets the burden of establishing an inability to perform prior work, the Commissioner must show, at step five, that the claimant can perform other substantial gainful work that exists in the national economy. *Reddick*, 157 F.3d 715 at 721. The claimant bears the burden of proof in steps one through four. *Bustamante v. Massanari*, 262 F.3d 949, 953-954 (9th Cir. 2001). The burden shifts to the Commissioner in step five. *Id.* at 954.

### III.   THE ALJ'S DECISION

The ALJ concluded that Plaintiff had not been under a disability within the meaning of the Social Security Act from August 1, 2009, through the date of the decision, April 24, 2012. AR 25. At step one the ALJ concluded that Plaintiff had not engaged in substantial gainful activity since

August 1, 2009. AR 27. At step two, the ALJ concluded that Plaintiff had the following severe impairments: history of polysubstance abuse; borderline intellectual functioning with history of learning disorder; post-traumatic stress disorder; and depressive disorder. *Id.* At step three, the ALJ concluded that Plaintiff did not have an impairment or combination of impairments that met or medically equaled a listed impairment in 20 C.F.R. § 404, Subpart P, Appendix 1. AR 28. Before considering step four, the ALJ determined that Plaintiff has residual functional capacity to perform a full range of work at all exertional levels but with the following non-exertional limitations: understanding and carrying out simple instructions; adequate memory for simple tasks; no contact with the public in person or by phone; limited contact to coworkers; should avoid hazards. AR 30. At step four, the ALJ concluded that Plaintiff was unable to perform any past relevant work. AR 35. Lastly, at step five, the ALJ concluded that there were jobs that exist in significant numbers in the national economy that Plaintiff could perform and so he was not disabled for the purpose of the Social Security Act. AR 35-36.

## IV.   DISCUSSION

In his motion for summary judgment, Plaintiff argues that the ALJ erred in denying his application for social security benefits and the case should be remanded for payment of benefits or, alternatively, further proceedings because (1) the ALJ erred in evaluating the medical evidence; (2)  the ALJ erred in evaluating Plaintiff's credibility; (3) the ALJ erred in determining that Plaintiff does not meet or equal a listed impairment; and (4) the ALJ erred in determining Plaintiff's residual functional capacity ("RFC").  (Pl.'s Mot. at 4.)

### A.   Evaluation of Medical Evidence

Plaintiff argues that the ALJ improperly weighed the medical evidence by rejecting the opinion of the treating source, rejecting portions of an examining psychologist's opinion, and assigning great weight to the opinion of a non-examining medical expert. (Pl.'s Mot. at 11; Pl.'s Reply at 2.)  Conversely, Defendant argues that the ALJ properly considered the medical evidence and provided "good reasons" for her weighting of the evidence. (Def.'s Opp'n at 3.)

In evaluating medical evidence from different physicians, the Ninth Circuit distinguishes among the opinions of three types of physicians. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir.

6

1995).  The three types are classified as (1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (non-examining physicians).  *Id.*  A treating Physician's opinion is entitled to controlling weight if it is well supported and consistent with other substantial evidence in the record.  20 C.F.R. § 404.1527(d)(2).  The opinions of treating medical sources may be rejected only for clear and convincing reasons if not contradicted by another doctor and, if contradicted, only for specific and legitimate reasons supported by substantial evidence.  *Chater,* 81 F.3d at 830.  Where the ALJ fails to provide adequate reasons for rejecting the opinion of a treating or examining physician, that opinion is accepted as true.  *Id.* at 834.

In the instant case, the ALJ gave "great weight" to the opinions of Dr. Griffin (a non-examining psychologist) and Dr. Ratto (an examining psychologist) to the extent that their opinions were consistent with her findings because "[they] [were] well supported by the medical evidence of the record."  AR 34.  Conversely, the ALJ gave no weight to the opinion of Plaintiff's treating physician Dr. Howard.  *Id.*

### i.   ALJ failed to provide specific and legitimate reasons for rejecting the opinion of Plaintiff's treating physician.

Since Dr. Howard's opinion is contradicted by the non-examining medical expert Dr. Griffin, the ALJ must provide specific and legitimate reasons for rejecting the opinion of the treating physician. *See Chater*, 831 F.3d at 830.

Dr. Howard is part of Plaintiff's treatment team at the VA, and sees Plaintiff 4-5 times per year. AR 1145.  Dr. Howard assessed Plaintiff's limitations as marked in activities of daily living, maintaining social functioning, and maintaining concentration, persistence, and pace. *Id.* He further found poor ability to complete a normal workday without interruptions for psychologically based symptoms, and to respond appropriately to changes in a work setting. AR 1146. Dr. Howard opined that Plaintiff's impairments and treatment would cause him to be absent from work more than four days per month. AR 1145.  Dr. Howard stated that alcohol or substance abuse does not contribute to the limitations, noting that "Mr. Sandefur's emotional problems render him unable to function in several areas, even apart from his alcoholism." AR 1146.

United States District Court
Northern District of California

1    The ALJ reasoning for affording no weight to Dr. Howard's opinion is that it was

2    inconsistent with his treating notes in the record "which indicate that [Plaintiff] was consistently

3    assigned a Global Assessment of Functioning ("GAF") score between 50 to 55, indicating only

4    moderate symptoms, and which demonstrate only moderate impairments in functioning." AR 34-

5    35.  Plaintiff argues, however, that the ALJ's reasoning for rejecting the opinion of Dr. Howard is

6    erroneous because it misstates the GAF scores assigned and Dr. Howard's treating records, beyond

7    GAF scores, which do support his opinion. (Pl.'s Reply at 2-3.)

8           a.   Global Assessment of Functioning ("GAF") Score

9    The GAF is a scale ranging from zero to 100, used to rate social, occupational and

10   psychological functioning on a hypothetical continuum of mental health.  *Williamson v. Astrue*,

11   No. EDC V 12-00364-CW, 2013 WL 141544, at *4 n. 4 (C.D. Cal. Jan. 10, 2013).  The GAF

12   score is a subjective determination that represents the clinician's judgment of the individual's

13   overall level of functioning. *Sigmon v. Kernan*, No. CV 06-5807 AHM (JWJ), 2009 WL 1514700,

14   at *9 n.3 (C.D. Cal. May 27, 2009).  A GAF score may help an ALJ assess mental residual

15   functional capacity ("RFC"), but is not raw medical data.  People with a GAF score of 41 to 50

16   have "serious symptoms" or any serious impairment in social, occupational or school functioning.

17   *Williamson v. Astrue*, No. EDCV 12-00364-CW, 2013 WL 141544, at *4 n.5 (C.D. Cal. Jan. 10,

18   2013).  By contrast, a GAF score of 51 to 60 indicates only "moderate difficulty in functioning."

19   *Atkinson v. Astrue*, No. 2:10-cv-02072-KJN, 2011 WL 4085414, at *10 (E.D. Cal. Sept. 13, 2011).

20   A GAF score of 61 to 70 indicates some mild symptoms or some difficulty in social, occupational

21   or school functioning but generally functioning well with some meaningful interpersonal

22   relationships. *Sigmon v. Kernan*, No. CV 06-5807 AHM (JWJ), 2009 WL 1514700, at *9 n.3

23   (C.D. Cal. May 27, 2009).

24   Plaintiff is correct in stating that the ALJ, in making her decision, mischaracterized the

25   GAF scores assigned and what those scores represented.  Plaintiff has not "consistently" received

26   GAF scores between 50 and 55.  In fact, Plaintiff has consistently received GAF scores of 50.

27   *See* AR 516, 874, 907, 1003, 1027, 1052, 1124, 1129.  Based on all GAF scores cited by the ALJ

28   in her decision and Defendant's motion, Plaintiff has received a GAF score of higher than 50 only

United States District Court
Northern District of California

once. *See* AR 674 (GAF score of 54). Furthermore, as Plaintiff argues, the ALJ mischaracterizes what the assigned scores indicate in her decision. The ALJ found that the GAF scores of Plaintiff indicated "moderate impairments in functioning." AR 35. In reality, Plaintiff has only scored in the moderate range once when he received a GAF score of 54 in December 2009. AR 674. At all other points in his treatment, Plaintiff's GAF score of 50 indicates that he has serious impairments.

Additionally, Dr. Howard's opinion is not inconsistent with his treating notes in the record as it pertains to Plaintiff's GAF scores. Dr. Howard opined that Plaintiff has difficulties in both maintaining social functioning and in maintaining concentration, and that he would be unable to stably manage work or interpersonal stress. AR 1146-47. Furthermore, Dr. Howard states that Plaintiff has fairly impaired functioning in his ability to understand, remember, carry out simple instructions, and perform activities within a schedule. AR 1146. Dr. Howard also opined that Plaintiff has impaired functioning in his ability to maintain regular attendance and carry out a normal workday and workweek without interruptions from psychologically based symptoms, and would be expected to miss more than four days of work per month. AR 1145-46. This opinion is not inconsistent with someone who consistently receives a GAF score of 50.

b. Treating Notes and Administrative Record ("AR") as a Whole

The opinion of Dr. Howard is consistent with the treatment notes, as well as the assessment by Dr. Ratto, the opinion of Dr. Candelaria-Green, and the opinion of Ms. Logan. As stated in the record, Plaintiff gets teary in his sessions at the VA, has low enthusiasm for life, and often feels overwhelmed by his daily tasks and chores. AR 419, 565, 634. Dr. Candelaria-Green found that Plaintiff has a limited short term memory capacity and that he will probably find tasks such as remembering "just-imparted instructions or information or mentally manipulating information in immediate awareness very difficult." AR 1153. Dr. Candelaria-Green further opined that the effects of Plaintiff's major depression and symptoms of PTSD are likely to exacerbate his problems with processing speed and learning difficulties. AR 1159. Similarly, Dr. Ratto found that Plaintiff is only able to understand and carry out simple instructions and that he would have difficulty with the stress of employment. AR 753. Lastly, Dr. Howard's opinion is also consistent with the opinion of Ms. Logan. Ms. Logan, who has worked with Plaintiff and his sons, opined in

2011 that: "Plaintiff would have difficulty maintaining employment due to his depression, inability to cope with stress, and increased need of time to process material and comprehension."  AR 786-88.

In light of the foregoing, the ALJ's determination that Dr. Howard's opinion is inconsistent with the evidence in the administrative record is not supported.  Therefore, since the ALJ has failed to give specific and legitimate reasons for rejecting the opinion of Plaintiff's treating physician, Dr. Howard's opinion must be accepted as true.

### ii.   ALJ erred in rejecting significant parts of examining psychologist's position.

Plaintiff contends that the ALJ erred in assigning great weight to those parts of Dr. Ratto's opinion that were consistent with the ALJ's decision, while summarily rejecting those parts that were inconsistent. (Pl.'s Mot. at 11.)  In opposition, Defendant argues that Plaintiff is misinterpreting Dr. Ratto's report, in which she opines that Plaintiff's limited ability to pay attention, concentrate, and remember still permits him to perform simple, repetitive tasks. (Def.'s Opp'n at 5.)

On February 26, 2011, Plaintiff underwent a consultative evaluation performed by Dr. Ratto, which consisted of a clinical interview, Mental Status Examination, Bender-Gestalt-II, Wechsler Adult Intelligence Scale-IV (WAIS-IV), and Wechsler Memory Scale-IV (WMS-IV). AR 751-54.  Dr. Ratto diagnosed Plaintiff with Dysthymic Disorder, possibly a Major Depressive Disorder, a history of a learning disorder, and alcohol and substance abuse in remission. AR 752. Dr. Ratto concluded that Plaintiff "is able to understand and carry out only simple instructions." AR 753.  Furthermore, Plaintiff's "impairment in his abilities is noted with weakness in his ability to pay attention and concentrate," and "his memory is also impaired and adequate for only simple tasks." *Id.*  Dr. Ratto believed that, "due to emotional difficulties some problems getting along adequately with others may arise," and "considering his current problems, he will have difficulty with the stress of employment." AR 753.  Dr. Ratto assigned Plaintiff a Full Scale IQ of 71, and stated that his working memory and processing speed indices fell in the Extremely Low range of functioning. *Id.*

The ALJ gave great weight to the parts of Dr. Ratto's assessment "consistent with this

United States District Court
Northern District of California

1    decision." AR 34.  In so doing, the ALJ selected only evidence that supported her conclusion, and

2    overlooked other findings.  An ALJ, however, is not allowed to consider only those portions of the

3    record that favor her ultimate conclusion. *See Gallant v. Heckler*, 753 F.2d 1450, 1456 (9th Cir.

4    1984).  Specifically, the ALJ credited Dr. Ratto's findings that Plaintiff could understand and

5    carry out only simple instructions, that his memory is adequate for only simple tasks, and that, due

6    to emotional difficulties, he would have some problems getting along adequately with others. AR

7    34.  The ALJ then essentially overlooked Dr. Ratto's opinion, which was based on clinical

8    findings, that Plaintiff has a significant impairment in concentration and would have difficulty

9    coping with the stress of employment.

10          Elsewhere in the decision, the ALJ called into question Dr. Ratto's diagnosis of a

11   significant impairment in attention, stating that "Dr. Rosemarie Ratto noted that the claimant was

12   unable to count backwards by sevens or to spell 'world' backwards, but that his concentration and

13   attention span appeared adequate to follow a three part simple command, and to focus on test

14   questions." AR 29.  When discounting medical evidence from an examining physician, the ALJ is

15   required to state "specific and legitimate" reasons for rejecting the evidence when the evidence in

16   question is contradicted by other records. *Lester*, 81 F.3d at 830-31.  Dr. Ratto opined that

17   Plaintiff's evaluation indicated that he has a "significant weakness in his ability to pay attention

18   and concentrate and on his memory ability." AR 753.  The fact that he is able to answer questions

19   and follow a simple three step command is an insufficient basis for rejecting Dr. Ratto's opinion

20   that Plaintiff has a severe impairment in maintaining attention.

21          Had the ALJ considered the required factors in determining the weight to assign Dr.

22   Ratto's assessment, she would have assigned greater weight to her entire opinion, because it is

23   from an examining relationship, is well supported by medical signs and objective testing, and is

24   consistent with the record overall. *See* 20 C.F.R. § 404.1527(c)(4).  Dr. Ratto's finding of a

25   significant impairment in concentration, attention, and difficulty in coping with the stress of a

26   work environment is well supported by the results of objective clinical testing. These findings are

27   also consistent with the treatment record, as described above. *See* discussion *supra* Part IV.A.i.

28          Accordingly, the ALJ should have given great weight to Dr. Ratto's conclusions regarding

1   Plaintiff's severe impairments in the area of concentration and attention, so that portion of her

2   medication opinion must be accepted as true.

3          **iii.    ALJ erred in assigning great weight to non-examining psychologist.**

4          Plaintiff argues that the ALJ erred in assigning great weight to Dr. Griffin, a non-

5   examining medical expert, who appeared at the hearing via telephone. (Pl.'s Mot. at 13-15.)

6   Defendant argues that the ALJ properly afforded significant weight to Dr. Griffin's opinion,

7   because his opinion that Plaintiff could perform simple, repetitive work was consistent with Dr.

8   Ratto's opinion, and with the record as a whole. (Def.'s Opp'n at 5.)

9          Specifically, Dr. Griffin characterized Plaintiff as someone who has suffered "primarily

10  from a history of polysubstance abuse." AR 48. He further noted a history of borderline

11  intellectual functioning with a history of a learning disorder, with a Full Scale IQ of 71, and

12  borderline memory functioning. AR 49.  Dr. Griffin further acknowledged Plaintiff's diagnoses of

13  post-traumatic stress disorder, and depression. *Id.*  When asked to assess whether Plaintiff's

14  conditions met any listings, Dr. Griffin stated that PTSD was "not well described" and that he was

15  unable to assess the severity of Plaintiff's depressive disorder "given the fact that the Claimant,

16  apparently, continues to use mood-altering substances, including marijuana and alcohol." AR 50.

17  Dr. Griffin reiterated that he was unable to offer an opinion as to Plaintiff's functional capacity

18  because his depressive disorder was "inseparable from my point-of-view from his substance

19  abuse." *Id.*  When asked whether a depressive disorder would exist in the absence of substance

20  abuse, Dr. Griffin stated that he could not tell. AR 51.  Dr. Griffin did opine that Plaintiff's

21  learning disability, which he refers to as "borderline intellectual functioning," would cause only a

22  mild impairment, limiting Plaintiff to simple, repetitive work.  AR 50-51.

23         Among the psychological opinions, Dr. Griffin's opinion should have been afforded the

24  least weight, since it is from a non-examining source.  *See* 20 C.F.R. § 404.1527(c)(1)(more

25  weight given to examining sources).  Notwithstanding, the ALJ assigned great weight to Dr.

26  Griffin's opinion "because it is well supported by the evidence of record, and consistent with the

27  record as a whole." AR 34.  This would be proper if Dr. Griffin's opinion consistent with the

28  record, which, as discussed above, it is not. 20 C.F.R. § 404.1527(c)(4), SSR 96-6p.  To illustrate,

United States District Court
Northern District of California

1   the other treating and examining sources were able to diagnose Plaintiff and identify RFC

2   limitations despite his history of drug and alcohol abuse. *See* discussion Parts IV.A.i-ii.  In

3   comparison, Dr. Griffin testified that he was unable to offer an opinion as to the severity of

4   Plaintiff's depressive disorder and unable to offer an opinion as to his functional capacity. AR 50.

5   This did not prevent Dr. Howard, who also facilitates a number of the drug treatment group

6   sessions at the VA, from concluding that "Mr. Sandefur's emotional problems render him unable

7   to function in several areas apart from his alcoholism." AR 1146.

8        Dr. Griffin's opinion is not supported by the other psychological evidence in the record,

9   nor is it consistent with that evidence. Nevertheless, the ALJ assigned Dr. Griffin the greatest

10   weight, without further explanation, which was in error.

    **B.   Plaintiff's Credibility**

11

12        Here, Plaintiff argues that the ALJ erred in evaluating Plaintiff's credibility by failing to

13   consider the entire case record and provide clear and convincing reasons for her finding.  (Pl.'s

14   Mot. at 16.)  Defendant contends the ALJ provided specific reasons supported by substantial

15   evidence to discount Plaintiff's credibility.  (Def.'s Mot. at 6.)

16        In evaluating a claimant's testimony regarding subjective pain or other symptoms, an ALJ

17   must engage in a two-step inquiry.  *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009) (citation

18   omitted).  An ALJ must first "determine whether the claimant has presented objective medical

19   evidence of an underlying impairment which could reasonably be expected to produce the pain or

20   other symptoms." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007) (internal quotations

21   and citations omitted).  At this step, a claimant need not show that her impairment "could

22   reasonably be expected to cause the severity of the symptom she has alleged; she need only show

23   that it could reasonably have caused some degree of the symptom." *Id.*  (internal quotation and

24   citations omitted).  Next, if a claimant meets this first prong and there is no evidence of

25   malingering, the ALJ must then provide "specific, clear, and convincing reasons" for rejecting a

26   claimant's testimony about the severity of her symptoms.  *Id.*

27        In assessing a claimant's credibility, the ALJ must consider, in addition to the objective

28   medical evidence, the claimant's daily activities; the location, duration, frequency, and intensity of

United States District Court
Northern District of California

the claimant's pain or other symptoms; factors that precipitate and aggravate the symptoms; the type, dosage, effectiveness, and side effects of any medication the claimant takes or has taken to alleviate the pain or other symptoms; treatment, other than medication, the claimant receives or has received for relief of pain or other symptoms; any measures, other than treatment, the claimant uses or has used to relieve pain or other symptoms; and any other factors concerning the claimant's functional limitations and restrictions due to pain or other symptoms. SSR 96-7p, 1996 SSR LEXIS 4 (July 2, 1996).

As to the first prong, the ALJ found that Plaintiff's underlying impairments could reasonably be expected to cause the alleged symptoms.  AR 31.  As to the second prong, the ALJ rejected Plaintiff's testimony about the severity of his symptoms, finding that they were not credible to the extent that they were inconsistent with the RFC assessment.  *Id.*

### i.   "Specific, Clear, and Convincing Reasons" for Rejecting Plaintiff's Testimony[2]

The ALJ articulates four reasons for rejecting Plaintiff's testimony. AR 31-33. Specifically, the ALJ found that Plaintiff's GAF scores indicate that his symptoms are moderate, he reports doing well, and his daily activities and reasons for leaving his last job undermine his credibility. *Id.*

#### a.   GAF Score

As addressed above, Plaintiff's GAF scores do not demonstrate moderate symptoms, and, therefore, are an insufficient basis for finding Plaintiff's testimony not credible.  *See* discussion *supra* Part IV.A.i.

///

---

[2] Defendant argues that the standard is not that the ALJ must provide "specific, clear, and convincing reasons" to discount Plaintiff's credibility, but rather that the standard is "substantial evidence." (Def.'s Mot at 6 (citing *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012)).) Defendant argues that this standard "does not require an ALJ's reasons be especially compelling or convincing." (Def.'s Mot. at 7.)  *Molina*, however, applies the "clear and convincing" standard when reviewing whether the ALJ properly discredited the claimant's testimony about the severity of her symptoms. 674 F.3d at 1112. Furthermore, here, the ALJ does not accuse Plaintiff of malingering, so the ALJ must provide "specific, clear, and convincing reasons" for rejecting his testimony.

United States District Court
Northern District of California

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

b.  Plaintiff's Reports of Doing Well

Plaintiff argues that the ALJ was selective in pointing out evidence in the record that only supported her conclusion that Plaintiff's condition had improved.  (Pl.'s Mot. at 16.)  Furthermore, Plaintiff contends that even if he had shown signs of improvement, there is no indication in the record that he improved to the point that he would be able to return to work.  *Id.*  Alternatively, Defendant argues that the ALJ properly considered the fact that Plaintiff's medical treatment was helping his condition when evaluating his credibility.  (Def.'s Opp'n at 7.)

If there is evidence of improvement in one's condition, that improvement must be such that it would allow one to return to work.  *See Rodriguez v. Bowen,* 876 F. 2d 759, 763 (9th Cir. 1989) (finding that although the claimant had improved, no physician had opined that any improvements would allow the claimant to return to work and therefore that reasoning was insufficient in rejecting the claimant's testimony).  In the instant case, however, Dr. Ratto assessed that Plaintiff retains the ability to perform simple, repetitive, tasks.  AR 753.  Furthermore, the ALJ cites that Dr. Candelaria-Green and Dr. Avery diagnosed Plaintiff with specific learning disabilities, but that these disabilities demonstrate that Plaintiff has work limitations not that he is unable to work.  AR 33.

Here, the ALJ is equating Plaintiff's belief that he is "doing well overall" to conclude that he has improved to the point that he is able to work.  Indeed, this assumption is undermined by the ALJ's opinion, in which she describes the variations of Plaintiff's mental health status over a period of two years. AR 32.  The vast variation—in which he is doing well followed by periods where he is not— suggests that Plaintiff's mental health disability is not controlled.  This, coupled with Plaintiff's borderline intellectual disability, indicates that Plaintiff is not in a position to engage in total self-assessment.  At most, this factor should have been neutral in determining whether or not Plaintiff's testimony was credible and therefore is not a sufficient reason for discrediting Plaintiff's testimony.

c.  Daily Activities

The ALJ found that Plaintiff's reported daily activities undermined his allegation that he was unable to perform all work. AR 33.  Specifically, the ALJ found that Plaintiff lives with and

United States District Court
Northern District of California

cares for his two young sons, takes welding classes four days per week, is able to prepare simple meals on a daily basis, perform chores, and is independent in his personal care. AR 33.  Plaintiff argues that these daily activities are part of a "normal life" and does not make his testimony less credible.  (Pl.'s Reply at 6.)

Daily activities may form the basis for an adverse credibility finding where the plaintiff's activities: (1) contradict his other testimony; or (2) meet the threshold for transferable work skills. *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007) (certain activities of daily living may be the basis for an adverse credibility finding "if a claimant is able to spend a substantial part of his day engaged in pursuits involving the performance of physical functions that are transferable to a work setting.").  The Ninth Circuit recognizes, however, that "many home activities are not easily transferable to what may be the more grueling environment of the workplace, where it might be impossible to periodically rest or take medication." *Id.* at 639.  The Ninth Circuit has "repeatedly asserted that the mere fact that a plaintiff has carried on certain daily activities, such as grocery shopping, driving a car, or limited walking for exercise, does not in any way detract from her capability as to her overall disability." *Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001). The Social Security Act, therefore, does not require that claimants be utterly incapacitated to be eligible for benefits.  *Fair v. Bowen,* 885 F. 2d 597, 603 (9th Cir. 1989).

Plaintiff's statements have consistently acknowledged that he is able to perform some activities that are required for daily living. *See* AR 259, 307-309.  The performance of these activities of daily living, however, may not meet the threshold of transferable work.  Indeed, Plaintiff indicated that he needs assistance to complete some of his household chores, and that it takes him "several hours" to prepare meals. AR 259, 309.  Plaintiff also reported that he does not bathe as often as he used to (AR 308, 419), and only goes grocery shopping when he is out of food (AR 310).

Plaintiff's statements acknowledging his ability to complete household activities do not contradict his testimony that he is unable to work.  Moreover, the ALJ never explains how these household activities demonstrate transferability to the more grueling environment of the workplace, specifically the electrical assembly and packing positions that Plaintiff is said to be

16

able to perform.  Thus, the ALJ's assertion that Plaintiff's activities of daily living undermine his credibility is not clear and convincing.

            d.  <u>Plaintiff's Reasons for Leaving His Prior Job</u>

In support of discrediting Plaintiff's testimony, the ALJ noted that Plaintiff testified that he left his last job because they told him there was no more work rather than an inability to perform the work. AR 33, 53.  Furthermore, the ALJ provided that Plaintiff "did not give a reason for why he could not do other work requiring only simple repetitive tasks." AR 34.

Plaintiff argues that this characterization of Plaintiff's testimony is misleading, because Plaintiff further testified that "everywhere I worked I just have problems with people . . . I try to do my job, but I just have problems with people," shows that Plaintiff lacks insight into the real reasons he stopped working. (Pl.'s Reply at 7 (citing AR 53).)  Specifically, while Plaintiff's "testimony indicates that . . . he may think that he was let go due to lack of work, and his age and lack of computer skills prohibit him from finding work, in actuality there were other reasons stemming from his mental health conditions." (Pl.'s Mot. at 18.)

In opposition, Defendant argues that because the ALJ found that Plaintiff's testimony undermined his prior claim that he left his job because he was unable to work, the ALJ's finding was not in error.  Defendant cites *Tommasetti v. Astrue*, 533 F. 3d 1035, 1040 (9th Cir. 2008), to support that the ALJ's finding in the instant case was proper.[3]  In *Tommasetti,* the Ninth Circuit found that one of the reasons the ALJ properly discredited the plaintiff's testimony was because he testified that his diabetes was not a disabling problem and could be controlled by medication, which directly contradicted his prior claims that his diabetes was among his disabling conditions. *Id.*

Plaintiff distinguishes *Tommasetti* by arguing that his disability is mental as opposed to physical and a hallmark of mental disability is a lack of insight in his ability to maintain employment.  (Pl.'s Reply at 7.)  This is well taken.  Not only are the cases factually distinct,

---

[3] Defendant's citation is conflicting between two cases but because his explanation parenthetical cites to the facts of *Tommasetti v. Astrue*, 533 F. 3d 1035, 1040 (9th Cir. 2008), that is what is cited here.

because *Tommasetti* did not involve a person with severe learning disabilities and mental health impairments, Plaintiff does not contradict himself: he obviously believes that he was let go because there was no more work, and that his age and technological ineptitude preclude other employment.  Moreover, the record supports Plaintiff's claim of lack of insight, as the combination of Plaintiff's impairments appear to result in an inability to engage in accurate self-assessment. *See* discussion *supra* Part IV.B.i.b.

In light of the foregoing, the ALJ's reasons for discrediting Plaintiff's testimony regarding the severity of his symptoms to the extent that it is inconsistent with the RFC assessment are insufficient.

### C.    Meet or Equal Listed Impairment

At step three, the ALJ found that Plaintiff's mental impairments do not meet or medically equal the criteria of listings in 12.04, 12.05, and 12.06. AR 28.  In making her determination, the ALJ considered whether or not the "paragraph B" criteria ("paragraph D" of 12.05) had been met. *Id.* The ALJ found that Plaintiff had mild restrictions in activities of daily living and moderate difficulties in social functioning, maintaining concentration, persistence or pace, and no episodes of decompensation. *Id.*  Plaintiff argues that the ALJ erred in finding that Plaintiff does not meet or equal a listed impairment, as there is substantial evidence to show that Plaintiff meets a 12.04 listing.  (Pl.'s Mot. at 19.)  Further, Plaintiff argues that the ALJ would have come to this conclusion if the medical evidence had been weighed properly.  *Id.*

In opposition, Defendant argues that Plaintiff's argument lacks merit, because the ALJ properly found that the requirements in "paragraph B" had not been met, which is required to meet a listing under 12.04.  (Def.'s Mot. at 8.)

To meet a listed impairment, a claimant must establish that he or she meets each characteristic of a listed impairment relevant to his or her claim. *Tackett v. Apfel*, 180 F. 3d 1094, 1099 (9th Cir. 1999).  To meet a listed impairment under 12.04, Plaintiff must either meet the requirements of both paragraphs A and B or meet the requirements of paragraph C.  Neither party argues that Paragraph C applies in the instant case, so Plaintiff must meet the requirements of paragraphs A and B.  To satisfy paragraph A, there must be a medically documented persistence,

United States District Court
Northern District of California

1   either continuous or intermittent, of either a depressive syndrome or manic syndrome

2   characterized by either four or three of the listed symptoms respectively.  20 C.F.R. Part 404,

3   Subpart P, § 12.04A.  Paragraph B is satisfied when the paragraph A impairment results in at least

4   two of the listed symptoms.  20 C.F.R. Part 404, Subpart P, § 12.04B.

5        The ALJ did not consider paragraph A in making her finding.  There is, however,

6   substantial evidence in the record to show that Plaintiff satisfies the requirements of Paragraph A §

7   1.  *See* AR 670, 634, 647, 740, 753, 787, 1104, 1133, 1139, 1145-47 (documenting Plaintiff's

8   symptoms of anhedonia, appetite disturbance with change in weight, sleep disturbance, decreased

9   energy, and difficulty concentrating).

10       Since there is substantial evidence in the record showing that Plaintiff satisfies paragraph

11   A requirements, the issue remains whether or not that impairment results in marked restrictions

12   and difficulties as Plaintiff argues or, as the ALJ found, whether the impairment only results in

13   moderate restrictions and difficulties.  A "marked" degree of limitation is more than moderate but

14   less than extreme.  20 C.F.R. Part 404, Subpart P, § 12.00(C).  A marked limitation arises so long

15   as "the degree of limitation such as to interfere seriously with your ability to function

16   independently, appropriately, effectively, and on a sustained basis." *Id.*

17       In finding that Plaintiff's restrictions were moderate, the ALJ based her conclusion on

18   Plaintiff's reported daily activities (welding classes and taking care of his young children), as well

19   as his ability to participate in group therapy and follow a three-part simple command. AR 28-29.

20   If the ALJ had given proper weight to the medical evidence, however, there is evidence that

21   Plaintiff's restrictions are in fact marked.  First, Plaintiff's treating physician, Dr. Howard, opined

22   that Plaintiff's "sadness, depression, and crying spells interfere with [Plaintiff's] social

23   functioning," and that he has marked difficulties in both activities of daily living and in

24   concentration, persistence, or pace.  AR 1145, 1147.  Second, Dr. Ratto's clinical testing

25   concluded that Plaintiff had significant weakness in his ability to pay attention and concentrate.

26   AR 753.  Lastly, Dr. Candelaria-Green and Dr. Avery found that Plaintiff's intellectual ability is

27   hindered by severe deficits in short-term memory, attention, and processing.  AR 1153-54.

28       Since the ALJ erroneously gave no weight to the opinion of Dr. Howard, and because she

United States District Court
Northern District of California

19

only gave weight to Dr. Ratto's opinion "to the extent it is consistent with [her] decision," the ALJ erred in finding that there was not substantial evidence in the record to support the proposition that Plaintiff had marked, rather than moderate, difficulties.

### D.  Determination of Plaintiff's Residual Functional Capacity

Plaintiff contends that the ALJ's RFC determination was not supported by substantial evidence and failed to consider all of Plaintiff's non-exertional limitations due to the improper weighing of evidence. (Pl.'s Mot. at 21.) In opposition, Defendant argues the ALJ properly credited the functional limitations that were supported by evidence which resulted in a proper RFC determination. (Def.'s Opp'n at 9.)

A claimant's RFC is what the claimant is capable of doing despite his or her mental and physical limitations. 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1); *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 689 (9th Cir. 2009); *Mayes v. Massanari*, 276 F.3d 453, 460 (9th Cir. 2001). An RFC is "an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis." SSR 96-8p. The ALJ must consider all relevant evidence in formulating an RFC, and "an RFC that fails to take into account a claimant's limitations is defective." *Valentine*, 574 F.3d at 690. The ALJ's findings may be set aside if not supported by substantial evidence. *McCartey v. Massanari*, 298 F.3d 1072, 1075 (9th Cir. 2002); *Smolen*, 80 F.3d at 1279. An ALJ may omit limitations arising out of a claimant's subjective complaints only if the subjective complaints have been properly discredited. *See Lingenfelter*, 504 F.3d at 1040-41 (RFC excluding subjective limitations was not supported by substantial evidence where the ALJ did not provide clear and convincing reasons for discrediting claimant's testimony).

Here, the ALJ concluded that Plaintiff has the functional capacity to perform a full range of work at all exertional levels, but with the following non-exertional limitations: understanding and carrying out simple instructions; adequate memory for simple tasks; no contact with the public in person or by phone; limited contact to coworkers; should avoid hazards. AR 30. The ALJ's improper weighing of the medical evidence affects her RFC determination, because she omitted several limitations, including those identified by Dr. Howard. For instance, the ALJ did not

20

United States District Court
Northern District of California

1  consider Plaintiff's poor capacity to complete a normal workday and workweek without

2  interruptions from psychologically based symptoms, frequent absenteeism, and his poor capacity

3  to respond appropriately to changes in a work setting. AR 1145-46.  As a result, the ALJ's RFC

4  determination was flawed, because it failed to include all of Plaintiff's limitations.

5      **E.**    **Remand for benefits is appropriate**

6        While remand is required, it is only proper to remand for an immediate award of benefits

7  if:

8          (1) the ALJ has failed to provide legally sufficient reasons for

9          rejecting such evidence, (2) there are no outstanding issues that must

        be resolved before a determination of disability can be made, and (3)

10          it is clear from the record that the ALJ would be required to find the

        claimant disabled were such evidence credited.

11  *Smolen v. Chater*, 80 F.3d 1273, 1292 (9th Cir. 1996) (citations omitted); *see also Harman v.*

12  *Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000).  As provided above, the ALJ's failure to properly

13  reject the medical opinions of Plaintiff's treating and examining physicians, requires that those

14  opinions be accepted as true.  *See Pierce v. Astrue*, 382 F. App'x 618, 619-20 (9th Cir. 2010).

15        At the hearing, the ALJ stipulated that if she were to accept the limitations set forth by Dr.

16  Howard—poor capacity to maintain concentration, attention and persistence; complete a normal

17  workday and workweek without interruptions from psychologically based symptoms; and respond

18  appropriately to changes in a work setting, as well as the likelihood of missing more than four

19  days of work a month—that there would be no work that Plaintiff could perform. AR 65, 1145-47.

20  As Dr. Howard's opinion must be accepted as true, and the ALJ has stipulated that no work would

21  be available for an individual with those limitations, remand for an immediate award of benefits is

22  proper.

23  ///

24  ///

25  ///

26  ///

27  ///

28  ///

## V.    CONCLUSION

In light of the foregoing, Plaintiff's motion for summary judgment is GRANTED, and this action is REMANDED to the Commissioner, pursuant to sentence four of 42 U.S.C. § 405(g), for an immediate award of benefits. Defendant's cross-motion for summary judgment is DENIED.

IT IS SO ORDERED.

Dated: September 29, 2015

KANDIS A. WESTMORE
United States Magistrate Judge